UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MACK FINANCIAL SERVICES                          CIVIL ACTION

VERSUS

L3 TRUCKING LLC, ET AL.                          NO. 20-00693-BAJ-SDJ

## RULING AND ORDER

Before the Court is Plaintiff's **Motion for Default Judgment Against All Defendants (Doc. 9)**. Plaintiff filed a Verified Complaint against Defendants, L3 Trucking LLC ("L3 Trucking") and Chad V. Landry, following their alleged default on two agreements. (Doc. 1 at ¶ 11). Defendants have been served but have not responded. (Doc. 5). The Clerk entered defaults as to both Defendants. (Doc. 7). Plaintiff now moves for entry of default judgment against both Defendants. For the reasons assigned, Plaintiff's Motion is **GRANTED**.

I.  **BACKGROUND**

   **A. Alleged Facts**

   This is a breach of contract action, arising from a December 29, 2017 Credit Sales Contract entered into between Plaintiff[1], a limited liability company formed under the laws of Delaware, and L3 Trucking, a limited liability company formed under the laws of Louisiana. (Doc. 1 at ¶ 5). L3 Trucking agreed to finance the

---

[1] While the Contract was entered into between the "Seller," Capitol Trucks, LLC, and the "Buyer," L3 Trucking LLC, the Contract was assigned "immediately upon execution" to Plaintiff, Mack Financial Services. (Doc. 1-4, p. 2); (Doc. 1-4, p. 6).

purchase of a 2018 Mack GU813, with a Dump Body OX 16ft Stampede Body attachment (the "Equipment"), subject to seventy-two monthly payments totaling $216,050.88 (the "Contract"). (*Id.*).

To secure the payment of the amount due under the Contract, as well as all other debts and obligations at any time owed by L3 Trucking to Plaintiff, L3 Trucking granted Plaintiff a security interest in the Equipment "together with all present and future attachments, accessions, replacements, parts, repairs, additions, substitutions, chattel paper, and proceeds, including amounts payable under any insurance policies" (the "Collateral"). (Doc. 1-4, p. 2).

On December 29, 2017, Defendant Chad V. Landry, a citizen of Louisiana, executed a Continuing Guaranty pursuant to which Landry guaranteed the "full, prompt and complete payment and performance of all sums, moneys, notes, loans [and] indebtedness" of L3 Trucking to Plaintiff and its subsidiaries and affiliates (the "Continuing Guaranty"). (Doc. 9-1, p. 5); (Doc. 1-6, p. 1).

L3 Trucking allegedly failed to make payments due in breach of the Contract. (Doc. 9-2 at ¶ 9). Subsequently, Landry failed to perform L3 Trucking's obligations under the Contract, in breach of the Continuing Guaranty. (Doc. 9-2 at ¶ 10). The Contract provides that, in the event of default, "the entire unpaid balance of the Total Obligation will bear interest at the rate of 18% per annum." (Doc. 1-4, p. 2). The Contract further provides that, in the event of late payments, "[a] late charge of 5% of any overdue amount on any Installment will be charged for each Installment not received in full. . . within fifteen (15) days of its due date." (*Id.*).

2

### B. Procedural History

On October 16, 2020, Plaintiff filed the instant Verified Complaint against Defendants for breach of contract and breach of guaranty. (Doc. 1). On the same day, Plaintiffs filed an *ex parte* Motion for Issuance of Writ of Sequestration. (Doc. 2). On October 31, 2020, service of process was perfected upon Landry, individually and as a registered agent of L3 Trucking. (Doc. 5); (Doc. 5-1). On December 14, 2020, Plaintiff moved for entry of default by the Clerk against Defendants. (Doc. 6). On December 14, 2020, the Clerk entered defaults against each Defendant. (Doc. 7). Despite receiving summons on October 31, 2020, Defendants have failed to respond to or otherwise defend this lawsuit. On March 4, 2021, Motion for Issuance of Writ of Sequestration was granted. (Doc. 10).

On January 12, 2021 Plaintiff moved for entry of default judgment. (Doc. 9).

## II.  LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure sets forth certain conditions under which default may be entered against a party, as well as the procedure by which a party may seek the entry of default judgment. In order to obtain a default judgment, the United States Court of Appeals for the Fifth Circuit has adopted a three-step process. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. FED. R. CIV. P. 55(a). Next, an entry of default must be entered by the clerk when the default is shown "by affidavit or otherwise." *See id.; New York Life*, 84 F.3d at 141. Third, a party may apply to the court for a default

3

judgment after an entry of default. FED. R. CIV. P. 55(b); *New York Life*, 84 F.3d at 141.

After a party files for a default judgment, courts must apply a two-part process to determine whether a default judgment should be entered. First, the Court must ascertain if the entry of default judgment is procedurally justified. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Several factors are relevant to this inquiry, including: (1) whether there are material issues of fact; (2) whether there has been substantial prejudice; (3) whether the grounds for default have been clearly established; (4) whether the default was caused by excusable neglect or good faith mistake; (5) the harshness of the default judgment; and (6) whether the court would think itself obliged to set aside the default on a motion by defendant. *Id.* Default judgments are disfavored due to a strong policy in favor of decisions on the merits and against resolution of cases through default judgments. *Id.* Default judgments are "available only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (citation omitted).

Second, the Court must determine whether the plaintiff's complaint sufficiently sets forth facts establishing that it is entitled to relief. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Hamdan v. Tiger Bros. Food Mart, Inc.*, No. CV 15-00412, 2016 WL 1192679, at *2 (M.D. La. Mar. 22, 2016). A default judgment may be supported by "well-pleaded allegations, assumed to be true." *Id.* (citing *Thomson v. Wooster*, 114 U.S. 104, 5 (1885)). The

4

Defendant, however, is "not held to admit facts that are not well-pleaded or admit to conclusions of law." *Id.*

Once the above process is complete, the Court must determine what form of relief Plaintiff should receive. *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F.Supp.2d 381, 384 (W.D. Tex. 2008). A defaulting defendant "concedes the truth of the allegations of the Complaint concerning defendant's liability, but not damages." *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, *4 (S.D. Tex., Oct. 5, 2011). Generally, "damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *J & J Sports Prods. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814; *See also United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). However, no hearing is required when "the amount claimed is a liquidated sum or one capable of mathematical calculation." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993).

## III.  Analysis

### A. Whether Default Judgment is Procedurally Justified

Pursuant to the *Lindsey* factors, the Court finds that the entry of default judgment is procedurally justified here.

First, there are no issues of material fact here. L3 Trucking was obligated to make seventy-two monthly payments totaling $216,050.88, while Landry acted as a guarantor for those payments. Defendants failed to adhere to the terms of the Contract and the Continuing Guaranty by failing to make payments. Second, substantial prejudice has resulted to the Plaintiff due to the breach. As of

5

December 28, 2020, a balance of $166,991.54 remains on the contract, representing a principal balance of $140,800.44 and interest in the amount of $26,191.10. (Doc. 9-1, p. 6). In addition, Defendants are responsible for late fees in the amount of $3,325.56, charged pursuant to the Contract. (*Id.*). Plaintiff has also incurred attorneys' fees and legal expenses as a result of its efforts to collect the amounts due. (*Id.* at p. 7). Third, the grounds for default are clearly established because, despite receipt of summons, notice of suit, and a writ of sequestration ordering the collection of the Equipment, Defendants have failed to respond or otherwise appear. Fourth, nothing before the Court suggests that the default was caused by good-faith mistake or excusable neglect. Fifth, default judgment is not overly harsh in this case, as the terms of the Contract and Continuing Guaranty Defendants signed were clear and unambiguous. Further, Defendants' failure to appear or otherwise defend their nonpayment mitigates the harshness of the default judgment. Sixth, and finally, nothing before the Court demonstrates that it would be obliged to set aside default on motion by Defendants.

The Court therefore finds that the six *Lindsey* factors weigh in favor of default.

## B. Whether Plaintiff's Complaint Establishes a Viable Claim for Relief

A default judgment "must be supported by well-pleaded allegations and must have a sufficient basis in the pleadings." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citing *Nishimatsu*, 515 F.2d at 1206). Pleading requirements for a default judgment are similar to those governed by Rule 8 of the Federal Rules of Civil Procedure. *Wooten*, 788 F.3d at 498. Rule 8 requires "a short

6

and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The primary purpose of Rule 8(a)(2) is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Plaintiff sued for breach of contract. Jurisdiction is based on diversity, so the Court applies the substantive law of the forum, Louisiana. *See Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Louisiana's choice-of-law rules require the Court to honor a contractual choice-of-law provision, except to the extent the law chosen "contravenes the public policy of the state" whose law would otherwise apply. LA. CIV. CODE art. 3540. Although Plaintiff's Motion relies on Louisiana law, *see* (Doc. 9-1, p. 4–7), both the Contract and the Continuing Guaranty are governed by North Carolina law. (Doc. 1-4, p. 3) ("**Governing Law:** This Contract . . . shall be governed by and construed in accordance with the internal laws of the State of North Carolina."); (Doc. 1-6, p. 1) ("This Guaranty shall be governed by the internal laws of the State of North Carolina."). Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Supplee v. Miller-Motte Bus. Coll., Inc.*, 768 S.E.2d 582, 590 (N.C. Ct. App. 2015) (internal quotation marks and citation omitted).

Plaintiff argued in its Complaint that the parties entered into a valid contract, in the form of the Contract and the Continuing Guaranty, that L3 Trucking was obligated under the Contract to make payments, that L3 Trucking failed to make

those payments, and that Landry failed to pay and perform L3 Trucking's obligations under the Contract. (Doc. 1, at ¶¶ 11–14). By defaulting on their payment obligations, Defendants caused Plaintiff damages. These facts are unopposed, as Defendants have not filed an opposition. Thus, Plaintiff's complaint establishes a valid claim for relief.

### C. Calculation of Damages

Plaintiff requested that judgment be entered against the Defendants for: (1) the $140,800.44 principal balance; (2) contractual interest in the amount of $26,191.10; (3) late fees in the amount of $3,325.56, and; (4) post judgment interest and the contractual or legal rate. (Doc. 9, p. 2).

The calculation of the amount owed is a simple one. Defendants are liable to Plaintiff for $170,317.10, the sum of the aforementioned amounts. "Federal law governs post-judgment interest." *Meaux Surface Protection, Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010). Plaintiff may recover post-judgment interest pursuant to 28 U.S.C. § 1961, which provides that post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment."

### D. Attorneys' Fees

Plaintiff also requests attorneys' fees, as provided for in the Contract. (Doc. 1-4, p. 3) ("Buyer agrees to pay on demand, all reasonable attorneys' fees and all other costs and expenses which may be incurred by Lender in the enforcement of this Contract."). North Carolina "traditionally has frowned upon contractual obligations

8

for attorney's fees as part of the costs of an action . . . unless such a recovery is expressly authorized by statute." *Stillwell Enterprises, Inc. v. Interstate Equipment Co.*, 200 N.C. 286, 289, 266 S.E.2d 812, 814 (1980). Under North Carolina law:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness . . . shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity, subject to the following provisions:
> . . .
> (2) If such note, conditional sale contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, such provision shall be construed to mean fifteen percent (15%) of the "outstanding balance" owing on said note, contract or other evidence of indebtedness."
> . . .
> (3) . . . the "outstanding balance" shall mean the principal and interest owing at the time suit is instituted to enforce any security agreement securing payment of the debt and/or to collect said debt.

N.C. GEN. STAT. ANN. § 6-21.2 (West 2009).

"An award of attorneys' fees under G.S. 6–21.2 must be supported by evidence and findings of fact showing the reasonableness of the award." *Barker v. Agee*, 93 N.C. App. 537, 378 S.E.2d 566, *review allowed* 381 S.E.2d 784, *affirmed in part, reversed in part* 389 S.E.2d 803, 326 N.C. 470 (1989).

In the case *sub judice* the parties agreed that Defendants would be liable for "reasonable attorney's fees" incurred by Plaintiff in its efforts to enforce the Contract. (Doc. 1-4, p. 3). However, Plaintiff's counsel has not articulated why attorneys' fees should be awarded in this case pursuant to North Carolina law. There have also been additional filings in this matter since the instant motion was filed. *See, e.g.* (Doc. 13). Therefore, the Court is not in a position to determine whether attorneys' fees are warranted without further information. Plaintiff's counsel shall submit

9

documentation outlining with specificity the attorney's fees incurred, as well as briefing on whether attorneys' fees are warranted and in what specific sums, pursuant to North Carolina law within fourteen days of the Court's order.

### E. Possession of the Equipment

Plaintiff asserts that, because it has a security interest in the Equipment, it is entitled to take possession of the Collateral pursuant to the Contract and the Continuing Guaranty. (Doc. 9-1, p. 7). Plaintiff requests that this Court order Defendants to return the Equipment to Plaintiff. (*Id.*). Plaintiff also requests that the Court affirmatively authorize Plaintiff to sell the Equipment "in partial satisfaction of the amounts owed under the Contract, reserving unto [Plaintiff] all other collection rights it may be entitled under the law in order to execute fully on the default judgment rendered in favor of [Plaintiff]." (*Id.*).

On October 16, 2020, Plaintiff moved for a Writ of Sequestration pursuant to Article 3571 of the Louisiana Code of Civil Procedure and Rule 64 of the Federal Rules of Civil Procedure. (Doc. 2, p. 1). Plaintiff's Motion was granted on March 4, 2021. (Doc. 10). The writ of sequestration was issued on March 4, 2021. (Doc. 11). Plaintiff is now the keeper of the Collateral. (Doc. 14). Therefore, Plaintiff's request to be put in possession of the property is moot.

Pursuant to Louisiana Code of Civil Procedure Article 3510, "a final judgment must be obtained in an action where a writ of attachment or of sequestration has issued before the property seized can be sold to satisfy the claim." Following the issuance of a final judgment in this matter, Plaintiff may sell the property to satisfy its claim.

## IV.     CONCLUSION

Because the Plaintiff has demonstrated that Defendants have defaulted on their obligations, and because Defendants have failed to appear or otherwise defend this action, default judgment is warranted.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion (Doc. 9) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants L3 Trucking LLC and Chad V. Landry are jointly and severally liable for and shall pay to Plaintiff $170,317.10, representing the principal balance in the amount of $140,800.44, contractual interest in the amount of $26,191.10, and late fees in the amount of $3,325.56.

**IT IS FURTHER ORDERED** that Defendants L3 Trucking LLC and Chad V. Landry are jointly and severally liable for and shall pay to Plaintiff postjudgment interest at the rate provided by 28 U.S.C. § 1961, which shall be computed daily and compounded annually until this Judgment has been paid in full.

**IT IS FURTHER ORDERED** that Plaintiff shall submit supporting documentation regarding attorney's fees and court costs consistent with this Order no later than fourteen days after the filing of this order.

A separate judgment will be issued.

Baton Rouge, Louisiana, this _28th_ day of July, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

11